UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

MICHAEL W. ALTON, JR.,[1]

        Plaintiff,

v.

                                    Case No. 3:17-cv-1230-J-34MCR

SERGEANT RICK ROBINSON,

        Defendant.

**ORDER**

**I. Status**

Plaintiff Michael W. Alton, Jr., while an inmate of the Florida penal system,[2] initiated this action on November 1, 2017, by filing a pro se Civil Rights Complaint Form (Complaint; Doc. 1). In the Complaint, Alton asserts claims pursuant to 42 U.S.C. § 1983 against Defendant Rick Robinson, a Florida Department of Corrections (FDOC) sergeant. He states that Robinson violated his Eighth Amendment right when he used excessive force against Alton at Union Correctional Institution (UCI) work camp on November 7, 2016. As relief, Alton seeks compensatory and punitive damages as well as declaratory relief.

This matter is before the Court on Defendant Robinson's Motion for Summary Judgment (Motion; Doc. 31). Robinson submitted exhibits in support of his summary

---

[1] The Clerk shall correct the docket to add "Jr." to Alton's name.

[2] The Florida Department of Corrections released Alton from custody on June 21, 2019. See Notice of Change of Address (Doc. 37).

judgment request. See Def. Exs. (Docs. 31-1 through 31-7).[3] The Court advised Alton of the provisions of Federal Rule of Civil Procedure 56, notified him that the granting of a motion to dismiss or a motion for summary judgment would represent a final adjudication of this case which may foreclose subsequent litigation on the matter, and gave him an opportunity to respond to the Motion. See Order (Doc. 5); Summary Judgment Notice (Doc. 32). Alton responded. See Response and Opposition to Defendant's Summary Judgment (Response; Doc. 36). He also submitted exhibits. See P. Exs. (Docs. 36-1 through 36-8). Defendant's Motion is ripe for review.

## II. Plaintiff's Allegations

In his Complaint, Alton asserts that he was verbally and physically assaulted twice while housed at the UCI work camp. See Complaint at 5. He states that the FDOC issued two disciplinary reports against him on November 7, 2016, for possessing tobacco and negotiables. See id. He avers that corrections officers escorted him to the lieutenant's office for questioning, and Defendant Robinson later took him to the visiting park's shakedown room where he was verbally reprimanded in an unreasonable manner. See id. According to Alton, Robinson used his open right hand to strike the left side of Alton's face, which forced his head against the wall. See id. He declares that officers escorted him to the UCI medical unit where they asked health-related questions. See id. at 6. Alton recounts that he "was afraid to state facts or answer any questions due to possible retaliation from escorting officers." Id. He asserts that he instead wrote to his fiancé (Ms.

---

[3] The Court cites to the document and page numbers as assigned by the Court's Electronic Case Filing System.

2

Baumberger) and explained that Robinson had assaulted him. Id. He states that the FDOC housed him in a confinement dormitory at the UCI Main Unit where Robinson stopped by Alton's cell on November 22nd and stated "quit talking sh[*]t back here or else." Id.

According to Alton, officers escorted him to a follow-up medical appointment on November 23rd, as a result of Baumberger's phone call. See id. He asserts that the FDOC released him from the UCI confinement unit and returned him to Robinson's shift at the UCI work camp on December 1, 2016. See id. Alton recounts that when he arrived, officers directed him to report to the main laundry building to receive his personal property. See id. He recalls that he noticed Robinson through a glass partition as he entered the dark, unlit building. See id. According to Alton, as he opened the door and partially entered, an "unknown individual" struck him on the left side of his face. Id. He states that the darkness hindered his ability to identify his attacker. See id. He avers that he "instantly retreated" from the incident. Id. Alton believes that Robinson was either the one who assaulted him or a facilitator in the assault. See id. Alton declares that the FDOC should not have returned him to the work camp. See id. at 7. According to Alton, he spoke with Inspector Kevin Snow, who took a recorded statement and assured Alton that he would try to retrieve the relevant camera footage.

### III. Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure (Rules(s)), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a). The record to be considered on a motion for summary judgment may include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).[4] An issue is genuine when the evidence is such that a reasonable jury could return a verdict in favor of the non-moving party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (quoting Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 919 (11th Cir. 1993)). "[A] mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat a motion for summary judgment." Kesinger ex rel. Estate of Kesinger v. Herrington, 381 F.3d 1243, 1247 (11th Cir. 2004) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

The party seeking summary judgment bears the initial burden of demonstrating to the court, by reference to the record, that there are no genuine issues of material fact to be determined at trial. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir.

---

[4] Rule 56 was revised in 2010 "to improve the procedures for presenting and deciding summary-judgment motions." Rule 56 advisory committee's note 2010 Amends.

> The standard for granting summary judgment remains unchanged. The language of subdivision (a) continues to require that there be no genuine dispute as to any material fact and that the movant be entitled to judgment as a matter of law. The amendments will not affect continuing development of the decisional law construing and applying these phrases.

Id. "[A]lthough the interpretations in the advisory committee['s] notes are not binding, they are highly persuasive." Campbell v. Shinseki, 546 F. App'x 874, 879 n.3 (11th Cir. 2013). Thus, case law construing the former Rule 56 standard of review remains viable.

1991). "When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (internal citations and quotation marks omitted). Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. In determining whether summary judgment is appropriate, a court "must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." Haves v. City of Miami, 52 F.3d 918, 921 (11th Cir. 1995) (citing Dibrell Bros. Int'l, S.A. v. Banca Nazionale Del Lavoro, 38 F.3d 1571, 1578 (11th Cir. 1994)).

### IV. Summary of the Arguments

In the Motion, Defendant Robinson asserts that there are no genuine issues of material fact, and therefore, the Court should grant summary judgment in his favor. He states that no reasonable jury could find in Alton's favor, and therefore, the Motion should be granted as to Alton's Eighth Amendment claim. See Motion at 6-9. He also maintains that he is entitled to qualified immunity. See id. at 15-16. Additionally, Robinson asserts that Alton is not entitled to compensatory and punitive damages under 42 U.S.C. § 1997e(e) because he has not alleged any physical injury resulting from Defendant's acts and/or omissions. See id. at 9-14. Finally, he asserts that the Eleventh Amendment bars Alton's claim for monetary damages against him in his official capacity. See id. at 16-17.

5

In his Response, Alton maintains that Defendant Robinson is not entitled to qualified immunity. See Response at 4-5. He states that he has met the physical-injury requirement in that he suffers hearing loss in the left ear as well as psychological injuries, such as post-traumatic stress and recurring nightmares. See id. at 3, 8.

### V. Law

### A. Eighth Amendment

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that (1) the defendant deprived him of a right secured under the United States Constitution or federal law, and (2) such deprivation occurred under color of state law. Salvato v. Miley, 790 F.3d 1286, 1295 (11th Cir. 2015); Bingham v. Thomas, 654 F.3d 1171, 1175 (11th Cir. 2011) (per curiam) (citation omitted); Richardson v. Johnson, 598 F.3d 734, 737 (11th Cir. 2010) (per curiam) (citations omitted). Additionally, the Eleventh Circuit requires "'an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation' in § 1983 cases." Rodriguez v. Sec'y, Dep't of Corr., 508 F.3d 611, 625 (11th Cir. 2007) (quoting Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986)). In the absence of a federal constitutional deprivation or violation of a federal right, a plaintiff cannot sustain a cause of action against the defendant.

With respect to the appropriate analysis in an Eighth Amendment excessive use of force case, the Eleventh Circuit has explained.

> [O]ur core inquiry is "whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 112 S.Ct. 995, 999, 117 L.Ed.2d 156 (1992). In determining whether force was applied maliciously and sadistically, we look to five factors: "(1) the extent of injury; (2) the need for

6

> application of force; (3) the relationship between that need and the amount of force used; (4) any efforts made to temper the severity of a forceful response; and (5) the extent of the threat to the safety of staff and inmates[, as reasonably perceived by the responsible officials on the basis of facts known to them]..." Campbell v. Sikes, 169 F.3d 1353, 1375 (11th Cir. 1999) (quotations omitted).

McKinney v. Sheriff, 520 F. App'x 903, 905 (11th Cir. 2013) (per curiam). "When considering these factors, [courts] 'give a wide range of deference to prison officials acting to preserve discipline and security, including when considering decisions made at the scene of a disturbance.'" Fennell v. Gilstrap, 559 F.3d 1212, 1217 (11th Cir. 2009) (per curiam) (quoting Cockrell v. Sparks, 510 F.3d 1307, 1311 (11th Cir. 2007)).

"The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Hudson v. McMillian, 503 U.S. 1, 9-10 (1992) (internal quotations and citations omitted). "A prisoner may avoid summary judgment, 'only if the evidence viewed in the light most favorable to him goes beyond a mere dispute over the reasonableness of the force used and will support a reliable inference of wantonness in the infliction of pain.'" Stallworth v. Tyson, 578 F. App'x 948, 953 (11th Cir. 2014) (quoting Brown v. Smith, 813 F.2d 1187, 1188 (11th Cir. 1987)). Notably, a lack of serious injury is relevant to the Eighth Amendment inquiry. See Smith v. Sec'y, Dep't of Corr., 524 F. App'x 511, 513 (11th Cir. 2013) (per curiam) (quoting Wilkins v. Gaddy, 559 U.S. 34, 38 (2010) (per curiam)). The United States Supreme Court explained.

> "[T]he extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have

7

been thought necessary' in a particular situation." Ibid.[5] (quoting Whitley, supra, at 321, 106 S.Ct. 1078).[6] The extent of injury may also provide some indication of the amount of force applied. As we stated in Hudson, not "every malevolent touch by a prison guard gives rise to a federal cause of action." 503 U.S. at 9, 112 S.Ct. 995.... An inmate who complains of a "'push or shove'" that causes no discernible injury almost certainly fails to state a valid excessive force claim. Id., at 9 (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)).[7]

Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury.

Wilkins, 559 U.S. at 37-38.

### B. Qualified Immunity

The Eleventh Circuit has stated:

> The qualified-immunity defense reflects an effort to balance "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). The doctrine resolves this balance by protecting government officials engaged in discretionary functions and sued in their individual capacities unless they violate "clearly established federal statutory or constitutional rights of which a reasonable person would have known." Keating v. City of Miami, 598 F.3d 753, 762 (11th Cir. 2010) (quotation marks and brackets omitted).

---

[5] See Hudson, 503 U.S. at 7.

[6] See Whitley v. Albers, 475 U.S. 312 (1986).

[7] See Johnson, 481 F.2d at 1033 ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.").

> As a result, qualified immunity shields from liability "all but the plainly incompetent or one who is knowingly violating the federal law." Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002). But the doctrine's protections do not extend to one who "knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff]." Harlow v. Fitzgerald, 457 U.S. 800, 815, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) (internal quotation marks and alteration omitted).
>
> To invoke qualified immunity, a public official must first demonstrate that he was acting within the scope of his or her discretionary authority. Maddox v. Stephens, 727 F.3d 1109, 1120 (11th Cir. 2013). As we have explained the term "discretionary authority," it "include[s] all actions of a governmental official that (1) were undertaken pursuant to the performance of his duties, and (2) were within the scope of his authority." Jordan v. Doe, 38 F.3d 1559, 1566 (11th Cir. 1994) (internal quotation marks omitted). Here, it is clear that Defendant Officers satisfied this requirement, as they engaged in all of the challenged actions while on duty as police officers conducting investigative and seizure functions.
>
> Because Defendant Officers have established that they were acting within the scope of their discretionary authority, the burden shifts to [the plaintiff] to demonstrate that qualified immunity is inappropriate. See id. To do that, [Plaintiff] must show that, when viewed in the light most favorable to him, the facts demonstrate that Defendant Officers violated [Plaintiff's] constitutional right and that that right was "clearly established ... in light of the specific context of the case, not as a broad general proposition[,]" at the time of Defendant officers' actions. Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), overruled in part on other grounds by Pearson, 555 U.S. 223, 129 S.Ct. 808. We may decide these issues in either order, but, to survive a qualified immunity defense, [the plaintiff] must satisfy both showings. Maddox, 727 F.3d at 1120-21 (citation omitted).

Jones v. Fransen, 857 F.3d 843, 850-51 (11th Cir. 2017).

## VI. Analysis[8]

### A. Excessive Use of Force

Defendant Robinson asserts that he is entitled to summary judgment as to Alton's Eighth Amendment claim against him. He submitted a Declaration in support of his summary judgment request. See Def. Ex., Doc. 31-1 at 1, Declaration of Sergeant Rick Robinson (Robinson Decl.). In his Declaration, Robinson states in pertinent part:

> I have reviewed the allegations made in the Complaint (Doc. 1) in case 3:17-cv-1230-MMH-MCR by inmate Michael Alton.
>
> The allegations are untrue. At no time did I escort Inmate Alton to the visiting park's shakedown room on November 7, 2016, and strike him in the head, forcing his head against the wall.
>
> Also, at no time did I strike or have anyone else strike Inmate Alton on December 1, 2016. Nor did I witness or was I aware of anyone else striking Inmate Alton. I did not go to Inmate Alton's cell while he was in confinement and state to him, quit talking shi[*]t back here or else.

Id. (enumeration omitted).

The chronology of events on which Alton bases his Eighth Amendment claim is as follows. In his Complaint, Alton asserts that Defendant Robinson verbally reprimanded and assaulted him on November 7, 2016 (the first incident), and either assaulted him or participated in facilitating an assault upon him (the second incident) on December 1, 2016. See Complaint at 5-6.[9] As to the first incident, Alton states that

---

[8] For purposes of summary judgment, the Court views the evidence and all reasonable inferences therefrom in the light most favorable to Plaintiff. Thus, the facts described in the Court's analysis may differ from those that ultimately can be proved.

[9] See Stallworth v. Tyson, 578 F. App'x 948, 950 (11th Cir. 2014) (citations omitted) ("The factual assertions that [plaintiff] made in his amended complaint should

Robinson used his open right hand to strike the left side of Alton's face, which caused Alton's head to hit the wall. See id. at 5. He states that corrections officers escorted him to the medical unit, however, he was too fearful of potential retaliation to answer questions or provide facts. See id. at 6. According to Alton, he instead reported the details of the first incident to Ms. Baumberger. Id.; see P. Ex., Doc. 36-6 at 4, Letter. Baumberger contacted Inspector General Snow on November 23, 2016 and reported that Robinson had assaulted Alton. See Def. Ex., Doc. 31-4 at 15; P. Exs., Docs. 36-7 at 1, 36-8 at 1. Baumberger's tip initiated an FDOC investigation as well as Alton's follow-up medical appointment, at which there were neither reported nor visible injuries. See P. Ex., Doc. 36-1 at 1-2, Emergency Room Record and Diagram of Injury; Def. Ex., Doc. 31-4 at 13-14.

As to the second incident, Alton states that he saw Robinson through a glass partition as he entered the laundry building. See Complaint at 6. According to Alton, an "unknown individual" struck him on the left side of his face. Id. Alton could not and still cannot identify his attacker. See id.; Response at 7. Nevertheless, given the circumstances, he "believes" Robinson assaulted him or "facilitated" the assault. Complaint at 6; Response at 7. That same day, Nurse Downs examined Alton, and noted a one-centimeter laceration with dried blood on his left earlobe and no visible injuries to his teeth, lips, or tongue. See P. Ex., Doc. 36-2 at 1-2, Emergency Room Record and Diagram of Injury; Def. Ex., Doc. 31-4 at 11-12. Nurse Downs also documented that Alton

---

have been given the same weight as an affidavit, because [plaintiff] verified his complaint with an unsworn written declaration, made under penalty of perjury, and his complaint meets Rule 56's requirements for affidavits and sworn declarations.").

11

complained about left-mouth pain. P. Ex., Doc. 36-2 at 1; Def. Ex., Doc. 31-4 at 1. On December 13, 2016, Alton provided the following facts in a written statement as part of the investigation surrounding his request for protection.

> On Nov. 7th I was assaulted by Sgt. R. Robinson at the work camp in the VP [(visiting park)] shakedown room shortly after I was found [with] tobacco and cash in Bravo Dorm.[10]
>
> On Dec 1st once released from confinement in O-dorm I returned to the work camp, walked into the Main Laundry[,] told to pick my property up and opened the door facing the chow hall and was struck 3 times in the left side of my head by [an] unknow[n] inmate and Sgt. Robinson to my left. I blacked out[,] went to LT office wanting no problems. I [a]m in fear for myself of Sgt. Robinson and inmates at the work camp. [I]n fear of more retaliation.

Def. Ex., Doc. 31-3 at 10, Incident Report.

Upon review of the record, Defendant's Motion is due to be denied. At a minimum, the record before the Court reflects genuine issues of material fact as to whether Defendant Robinson used force upon Alton on November 7, 2016, and either used force upon Alton or facilitated another person's assault upon Alton on December 1, 2016. The parties present markedly different accounts as to whether any force was used during the two incidents and what may have motivated Robinson as he encountered (or allegedly encountered) Alton on the two occasions. Alton states that Defendant Robinson struck him on November 7th, and either struck him on December 1st or facilitated someone else's attack on Alton. According to Alton, the first incident occurred as Robinson reprimanded him about his disciplinary infractions, and the second incident happened

---

[10] See Def. Exs., Docs. 31-2, 31-3, Disciplinary Reports for possession of negotiables and tobacco.

after Robinson's November 22nd threat and upon Alton's return to Robinson's shift at the work camp. In contrast, Defendant Robinson denies that he struck Alton on November 7th, and further denies that he struck or had anyone else strike Alton on December 1st. See Robinson Decl.

The United States Supreme Court has acknowledged that the extent of the injury is a factor that may provide some evidence of the amount of force applied and whether the use of force was necessary under the specified circumstances. See Wilkins, 559 U.S. 34 at 37-38. However, a court ultimately should decide an excessive force claim based on the nature of the force used rather than the extent of the injury. Id. at 38. Alton's medical records reflect that there were no reported or visible injuries at the November 23, 2016 examination. See P. Ex., Doc. 36-1 at 1-2; Def. Ex., Doc. 31-4 at 13-14. And, on December 1st, the nurse noted a one-centimeter laceration with dried blood on his left earlobe and no other visible injuries. See P. Ex., Doc. 36-2 at 1-2; Def. Ex., Doc. 31-4 at 11-12. Nevertheless, Alton maintains that he suffers hearing loss in his left ear, see Response at 8, and that the medical staff documented his hearing loss on August 16, 2018, see P. Exs., Docs. 36-3; 36-5 at 8-9. Here, the parties offer significantly different accounts of Defendant Robinson's motivation and involvement in the November 7th and December 1st incidents. On this record, the Court finds that there remain genuine issues of material fact with respect to Plaintiff's Eighth Amendment claim against Defendant Robinson. As such, Defendant's Motion is due to be denied.

## B. Eleventh Amendment

To the extent Defendant Robinson asserts that he is entitled to Eleventh Amendment immunity, the Court agrees.

> The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. It is well established that, in the absence of consent, "a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." Papasan v. Allain, 478 U.S. 265, 276, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (quotation omitted). The Eleventh Amendment also prohibits suits against state officials where the state is the real party in interest, such that a plaintiff could not sue to have a state officer pay funds directly from the state treasury for the wrongful acts of the state. Summit Med. Assocs., P.C. v. Pryor, 180 F.3d 1326, 1336 (11th Cir. 1999)....

Hayes v. Sec'y, Fla. Dep't of Children & Families, 563 F. App'x 701, 703 (11th Cir. 2014) (per curiam).

The Eleventh Circuit has stated:

> It is clear that Congress did not intend to abrogate a state's eleventh amendment immunity in section 1983 damage suits. Quern v. Jordan, 440 U.S. 332, 340-45, 99 S.Ct. 1139, 1144-45, 59 L.Ed.2d 358 (1979). Furthermore, after reviewing specific provisions of the Florida statutes, we recently concluded that Florida's limited waiver of sovereign immunity was not intended to encompass section 1983 suits for damages. See Gamble,[11] 779 F.2d at 1513-20.

Zatler, 802 F.2d at 400. Accordingly, in Zatler, the court found that the FDOC Secretary was immune from suit in his official capacity. Id. Insofar as Alton may be seeking

---

[11] Gamble v. Fla. Dep't of Health & Rehab. Serv., 779 F.2d 1509 (11th Cir. 1986).

monetary damages from Defendant Robinson in his official capacity, the Eleventh Amendment bars suit. Therefore, Defendant Robinson's Motion is due to be granted as to Alton's claim for monetary damages from him in his official capacity.

### C. Physical Injury Requirement
### 42 U.S.C. § 1997e(e)

Next, the Court turns to Defendant's assertion that Alton is not entitled to compensatory and punitive damages under 42 U.S.C. § 1997e(e) because he has not alleged any physical injuries that are more than de minimis, resulting from Defendant's acts and/or omissions. In Brooks v. Warden, 800 F.3d 1295 (11th Cir. 2015), the Eleventh Circuit Court of Appeals addressed the availability of compensatory and punitive damages as well as nominal damages in suits brought by prisoners under § 1983. The Eleventh Circuit stated:

> The PLRA places substantial restrictions on the judicial relief that prisoners can seek, with the goal of "reduc[ing] the number of frivolous cases filed by imprisoned plaintiffs, who have little to lose and excessive amounts of free time with which to pursue their complaints." Al-Amin v. Smith, 637 F.3d 1192, 1195 (11th Cir. 2011) (quoting Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002)). The section of the Act at issue here, 42 U.S.C. § 1997e(e), reads this way:
>
> > No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act....
>
> This Court has held that § 1997e(e) applies to all federal civil actions, including constitutional claims brought under § 1983. See Harris v. Garner (Harris II), 216 F.3d 970, 984-85 (11th Cir. 2000) (en banc)....

> In this case, [Plaintiff] did not allege any physical injury .... Nevertheless, he sought "compensatory . . . punitive, and nominal damages" from [Defendant]. **Under the statute and our caselaw, an incarcerated plaintiff cannot recover either compensatory or punitive damages for constitutional violations unless he can demonstrate a (more than de minimis) physical injury.** See Al-Amin, 637 F.3d at 1198 (punitive); Harris v. Garner (Harris I), 190 F.3d 1279, 1286 (11th Cir. 1999) (compensatory), reh'g en banc granted and opinion vacated, 197 F.3d 1059 (11th Cir. 1999), opinion reinstated in relevant part, 216 F.3d 970. However, we have never had the opportunity in a published opinion to settle the availability of nominal damages under the PLRA. We do today, and we hold that nothing in § 1997e(e) prevents a prisoner from recovering nominal damages for a constitutional violation without a showing of physical injury.

Brooks, 800 F.3d at 1307-08 (emphasis added). Thus, to satisfy § 1997e(e), a prisoner must assert physical injury that is more than de minimis. However, the injury does not need to be significant. See Thompson v. Sec'y, Fla. Dep't of Corr., 551 F. App'x 555, 557 (11th Cir. 2014) (citation omitted); Dixon v. Toole, 225 F. App'x 797, 799 (11th Cir. 2007).

Taking Alton's allegations as to his injuries as true, he asserts a physical injury that is greater than de minimis. The physical injury Alton complains about is allegedly the result of Defendant Robinson's assaultive behavior. According to Alton, he suffers hearing loss in the left ear. Alton's alleged hearing loss, for which he sought medical treatment, crosses § 1997e(e)'s de minimis threshold. See Thompson, 551 F. App'x at 557 n.3 (describing an approach of asking whether the injury would require a free world person to visit an emergency room or doctor) (citing Luong v. Hatt, 979 F. Supp. 481, 486 (N.D. Tex. 1997) ("A physical injury is an observable or diagnosable medical condition requiring treatment by a medical care professional. It is not a sore muscle, an aching back, a scratch, an abrasion, a bruise, etc., which lasts even up to two or three weeks.")). Thus,

Defendant's Motion is due to be denied to the extent that the Court finds Alton's request for compensatory and punitive damages is not precluded under § 1997e(e) because he alleges that he suffered a physical injury that is greater than de minimis.

Therefore, it is now

**ORDERED**:

1. Defendant Robinson's Motion for Summary Judgment (Doc. 31) is **PARTIALLY GRANTED** as to Alton's claim for monetary damages from him in his official capacity. Otherwise, the Motion is **DENIED**.

2. The parties are encouraged to discuss the possibility of settlement and notify the Court if their efforts are successful. In doing so, Plaintiff and Defendant are encouraged to maintain a realistic approach in making and/or considering any settlement offers. If the parties are unable to settle the case privately and want a Magistrate Judge to conduct a settlement conference, they should notify the Court **no later than November 12, 2019.**

**DONE AND ORDERED** at Jacksonville, Florida, this 7th day of October, 2019.

*Marcia Morales Howard*
MARCIA MORALES HOWARD
United States District Judge

sc 10/4
c:
Michael W. Alton, Jr.
Counsel of Record